**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

                                        Chapter 13

VIRGINIA OBASI,
                                        Case No. 10-10494 (SHL)

                    Debtor.

------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

A P P E A R A N C E S:

OFFICE OF THE UNITED STATES TRUSTEE
*Tracy Hope Davis, United States Trustee for Region 2*
33 Whitehall Street
21st Floor
New York, New York 10004
  By:   Greg M. Zipes, Esq.

WILLKIE FARR & GALLAGHER LLP
*Counsel to Brice, Vander Linden & Wernick, P.C. and Lawrence J. Buckley*
787 Seventh Avenue
New York, New York 10019
  By:   Alan J. Lipkin, Esq.
         Jared R. Jamesson, Esq.

SHAEV & FLEISCHMAN, LLP
*Counsel to the Debtor*
350 Fifth Avenue
Suite 7210
New York, New York 10118
  By:   David B. Shaev, Esq.

**SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is an order to show cause brought on motion of the United States

Trustee (the "UST") as to why the law firm of Brice, Vander, Linden & Wernick, P.C. (the

"Brice Firm") and Lawrence J. Buckley ("Buckley"), an attorney with the firm, should not be

held in civil contempt or, alternatively, subject to sanctions. The principal issue before the

Court is Buckley's failure to review a proof of claim in this case before it was submitted to the Court with Buckley's electronic signature. The Court finds that the practice of Buckely, and the Brice Firm, of submitting proofs of claim without review by the signing attorney is a clear violation of Bankruptcy Rule 9011, the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure. While the Court finds that this practice violates Bankruptcy Rule 9011, it denies the UST's request for civil contempt and sanctions because the UST's motion was not first served upon Buckley and the Brice Firm as required by the safe harbor provision of Bankruptcy Rule 9011.

## BACKGROUND

On January 29, 2010, Virginia Obasi (the "Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor's schedules of assets and liabilities included her interest in a two-family house located at 1255 Harrod Avenue, Bronx, New York (the "Property"). (ECF Doc. # 1.) On February 5, 2010, a proof of claim (the "Claim")[1] was electronically filed in the Debtor's case on behalf of Deutsche Bank National Trust Company, as Trustee for the Certificateholders of Soundview Home Loan Trust 2005-OPT3, Asset-Backed Certificates, Series 2005-OPT3 ("Deutsche Bank"). The Claim was filed using the electronic case filing login and password of Buckley. It was signed electronically in Buckley's name using the "/s/" signifier, with Buckley identified as the "Creditor's Authorized Agent." (Zipes Decl. Ex. A.) Attached to the Claim was a note and mortgage held by Option One Mortgage Corporation ("Option One") on the Property. (*Id.*)[2] The Claim did not include an assignment of mortgage from Option One to Deutsche Bank, or any

---

[1] The Clam is designated on the Debtor's claims register as Claim No. 2. A copy of the Claim is attached as Exhibit A to the Declaration of Greg M. Zipes, dated August 26, 2011 (ECF Doc. # 58) (the "Zipes Declaration"). The Claim was amended on October 13, 2011.

[2] Beneficial Homeowner Service Corporation appears to hold a second mortgage on the Property in the amount of $47,925.02.

2

other document explaining the basis for Deutsche Bank to seek payment based upon the mortgage between the Debtor and Option One. Exhibit A to the Claim was an itemization of amounts asserted to be due and owing by the Debtor, including attorney's fees and costs. (*Id.*)

On May 10, 2010, the Debtor objected to the Claim on the grounds that Deutsche Bank lacked standing to file a proof of claim against the Debtor. (ECF Doc. # 13.) The Debtor argued that the Claim failed to demonstrate a complete chain of title for the Property from Option One to Deutsche Bank. Due to an alleged discrepancy in the request for attorney's fees, the Debtor's objection also asked for an accounting of all charges related to the Claim. The UST filed a statement in support of the Debtor's objection. (ECF Doc. # 23.) On June 30, 2010, counsel to Deutsche Bank filed a response to the objection. It explained that Buckley was an employee of American Home Mortgage Services, Inc. ("AHMSI"),[3] that he had prepared the Claim, and that AHMSI was authorized to execute the Claim on behalf of Deutsche Bank. (ECF Doc. # 18, at 4.)

In connection with the objection, Buckley was deposed and provided information regarding the preparation of the Claim. Buckley testified that, in addition to practicing law with the Brice Firm and being employed by AHMSI, he was also a part-owner and vice-president of National Bankruptcy Services ("NBS"), which provided paralegal and other support services to the Brice Firm. (Zipes Decl. Ex. B, Buckley Dep. Tr., 13:25 – 14:2, Mar. 7, 2011.) The internal procedures at the Brice Firm provided that NBS prepared proofs of claim, which were then submitted to the firm for review by an attorney at or near the time of filing. (*Id.* at 38:20 – 40:3.) Buckley further testified that he did not physically sign the

---

[3] AHMSI is the current servicer of the mortgage loan. (Decl. of Lawrence J. Buckley, Sept. 26, 2011, ¶ 8.)

3

Claim, and he did not see the Claim before it was filed with his electronic signature. (*Id.* at 28:24 – 30:4.) Rather, an attorney at the firm named Craig Edelman ("Edelman") reviewed the Claim. (Second Decl. of Lawrence J. Buckley, October 5, 2011, ¶ 6.) Edelman was under the general supervision of Buckley, and had been trained by Buckley to review proofs of claim through the use of an internal checklist. (Decl. of Lawrence J. Buckley, Sept. 26, 2011, ¶ 16.) Based on pre-authorization from Buckley, Edelman directed that the Claim be filed using Buckley's ECF login and password. (*Id.* at ¶ 17.) Edelman used Buckley's ECF login and password presumably because Buckley was the only attorney at the firm who had such a login and password for this Court. (*See* Zipes Decl. Ex. B, Buckley Dep. Tr., 108:6 – 18, Mar. 7, 2011.)

After the order to show cause was issued in this case, Buckley and the Brice Firm further explained the procedures that had been followed in preparing the Claim and presumably all mortgage claims they have filed in this district:

- Obtain and review copies of the Note, Mortgage, and related AHMSI and Deutsche Bank business records.

- Compare the Note and Mortgage with the Debtor's Chapter 13 Petition and Schedules both to confirm the Debtor was the obligor on the Note and to check related information.

- Confirm that AHMSI's business records reflected it was the servicer for the current holder of the Note and Mortgage.

- Confirm that the Mortgage was perfected.

- Review AHMSI's business records to calculate the Debtor's liability for principal, interest, and other amounts due under the Note as of the Debtor's petition date, including reviewing invoices for services performed in connection with AHMSI's efforts to foreclose on the Mortgage.

- Redact personal identifiers of the Debtor as required by Bankruptcy Rule 9037.

4

- Compare the proof of claim with the Note, Mortgage, and related attorney invoices.

(Memo. of Law ¶ 13.)[4] While these steps are described as having been taken by the Brice Firm, a footnote in respondents' briefing acknowledges that "assistance" was provided by NBS pursuant to an agreement with the Firm to provide "certain back office services." (*Id.* at n. 7.) Indeed, Buckley testified that the firm's internal procedures provided for NBS to prepare the proofs of claim, which were then submitted to the firm for review by an attorney at or near the time of filing. (Zipes Decl. Ex. B, Buckley Dep. Tr., 38:20 – 40:3, Mar. 7, 2011.) It appears, therefore, that the steps identified above were performed by paralegals and support staff, before the Claim was reviewed by Edelman and submitted using Buckley's ECF login and password.

The UST argues that the procedures utilized by Buckley and his firm violate this Court's requirements for the filing and signing of documents submitted by electronic means on the Court's electronic filing system, as set forth in M-242. The UST also asserts that they violate Bankruptcy Rule 9011 and Local Bankruptcy Rule 9011-1. The UST seeks to have the respondents held in civil contempt or, in the alternative, subject to sanctions under Section 105 of the Bankruptcy Code. Buckley and the Brice Firm assert that the UST misinterprets the requirements of M-242, that their activities are not sanctionable, and that neither civil contempt nor sanctions may be imposed because there was no compliance with the safe harbor provision of Bankruptcy Rule 9011.

---

[4] The respondents cite to certain portions of Buckley's deposition transcript to support the assertion that these steps were taken in preparing the Claim. As the pages of the deposition transcript cited by the respondents were not provided to the Court, however, the Court relies instead on the information contained in the publicly filed pleadings, including the Buckley Declarations.

5

**DISCUSSION**

Under Bankruptcy Rule 5005, "[a] court may by local rule permit or require documents to be filed, signed, or verified by electronic means . . . ." Fed. R. Bankr. P. 5005(a)(2). During the relevant period at issue, Bankruptcy Rule 5005 was implemented through M-242, which provides for the electronic filing, signing and verification of documents in this Court.[5] Under M-242, pleadings filed in accordance with the electronic filing procedures must "identify the initials and last four digits of the social security number of the attorney signing such pleading or other document. Additionally, the electronically filed document shall indicate an 'electronic signature,' e.g., 's/Jane Doe'." (M-242, Ex. 1, p. 6.) M-242 further requires that "[n]o attorney or other person shall knowingly permit or cause to permit the attorney's password to be utilized by anyone other than an authorized member or employee of the attorney's law firm." (M-242, ¶ 3.) Notably, M-242 explicitly incorporates Bankruptcy Rule 9011 by stating that "the use of an attorney's password to file a document electronically shall constitute the signature of that attorney for purposes of FRBP 9011 and LRBP 9011-1." (*Id.*, ¶ 4.)

While the parties have debated whether the conduct at issue violates the rules regarding the electronic filing of documents, the Court believes the real issue concerns an attorney's obligations when submitting documents to the Court. Those obligations are governed by Bankruptcy Rule 9011. That Rule provides that an attorney presenting a

---

[5] The Court's current administrative order regarding the electronic filing, signing and verification of documents is M-399. However, the relevant order for purposes of this discussion is M-242, which was in effect at the time the Claim was filed. *See Schwartz v. Kujawa (In re Kujawa)*, 256 B.R. 598, 614 (B.A.P. 8th Cir. 2000), *rev'd in part on other grounds*, 270 F.3d 578 (8th Cir. 2001) ("[An attorney's] conduct is to be reviewed under the standards applicable when his conduct took place.") (citing *Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund*, 145 F.3d 929, 933 (7th Cir. 1998); *Runfola & Assocs. Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373 (6th Cir. 1996)). As M-399 does not contain any material revisions from M-242 regarding electronic filing, the results of this decision would be the same under either order.

6

document to the Court is personally responsible for reviewing the document for a variety of reasons going to the good faith basis for and accuracy of the document's contents. The Rule provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, *an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances*,--
>
>   (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
>   (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
>   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b)(3) (emphasis added). By its provisions, Bankruptcy Rule 9011 places "an affirmative duty on attorneys and litigants to make a reasonable investigation (under the circumstances) of the facts and the law before signing and submitting any petition, pleading, motion or other paper.'" 10 Collier on Bankruptcy ¶ 9011.04[2][a] at 9011-7.

Bankruptcy Rule 9011 allows the imposition of "appropriate sanctions upon the attorneys, law firms, or parties that have violated [Bankruptcy Rule 9011(b)] or are responsible for the violation. . . . Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." Fed. R. Bankr. P. 9011(c). The authority to impose sanctions "extends to out-of-state partners of

7

multi-state firms." *In re Ulmer*, 363 B.R. 777, 782 (Bankr. D.S.C. 2007) (citing *In re Rivera*, 342 B.R. 435, 465-66 (Bankr. D.N.J. 2006)).

Respondents raise four arguments in support of their position that their conduct did not violate Bankruptcy Rule 9011. The Court rejects these arguments as flatly inconsistent with the language and spirit of the Rule.

First, they contend that Bankruptcy Rule 9011's requirement of reasonable inquiry was satisfied by the procedures employed by the firm before filing the Claim. But their argument ignores the personal nature of an attorney's obligations under Bankruptcy Rule 9011. As the Advisory Committee Notes to the Rule make abundantly clear, "[t]he person signing, filing, submitting, or advocating a document has a *nondelegable* responsibility to the court . . . ." Fed. R. Civ. P. 11 advisory committee's note (emphasis added). The statutory history of Rule 11 of the Federal Rules of Civil Procedure[6] also clearly supports the notion that a party whose signature appears on a document must personally review such document prior to filing. Rule 11 was amended in 1993 to delete language stating that "[t]he signature of an attorney . . . constitutes a certificate that the attorney . . . has read the document." Fed. R. Civ. P. 11 (amended 1993). The Advisory Committee Notes associated with the amendment observe that this language was deleted only because such an obligation was clear even without the language:

> The provision in the former rule that signing a paper constitutes a certificate that it has been read by the signer also has been eliminated as unnecessary. *The obligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court.*

---

[6] The Second Circuit has stated that Rule 9011 "parallels Federal Rule of Civil Procedure 11, containing only such modifications as are appropriate in bankruptcy matters. . . . Accordingly, our review of the lower courts' application of Rule 9011 is informed by Rule 11 jurisprudence." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991) (internal citations and quotations omitted).

8

Fed. R. Civ. P. 11 advisory committee's note (emphasis added). Bankruptcy Rule 9011 was amended in 1997 "to conform to the 1993 changes to F.R.Civ.P. 11." Fed. R. Bankr. P. 9011 advisory committee's note.

Consistent with the plan language of the Rule, the case law uniformly supports the view that an attorney who has signed a document must review the document prior to filing. *See In re Hurd,* 2010 Bankr. Lexis 2656, at *5 (Bankr. D. Id. Aug. 11, 2010) ("Counsel did not review the final documents prior to their submission and, thus did not catch the patent error in the first order's terms, or question why the Debtor's attorney or Trustee would approve such an order. He did not personally confirm the approvals were obtained. His approach and his delegated system were flawed."); *In re Ulmer*, 363 B.R. 777, 783 (Bankr. D.S.C. 2007) ("By failing to review and sign the documents submitted to this Court and that bear her signature, [the attorney] violated Rule 9011(a) and (b). . . . This practice of submitting documents containing an electronic signature of a party that has not actually reviewed and signed the documents is not proper."); *In re KTMA Acquisition Corp.*, 153 B.R. 238, 249 (Bankr. D. Minn. 1993) ("[J]ust reading the filing supports the conclusion that the signer did not do a reasonable amount of pre-filing inquiry.") (citing *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)). Thus, this Court concludes that an attorney's advance authorization to use his signature, without any intention to personally review the pleading prior to filing, does not constitute a reasonable inquiry under Bankruptcy Rule 9011 regardless of the steps taken by the firm.[7]

---

[7] Buckley and the Brice Firm argue that several of these cases can be distinguished as situations where paralegals performed work and no attorney was involved in any capacity. But they ignore that the courts in these cases imposed sanctions based upon the attorney's failure to personally review the papers that he or she signed. Indeed, practices like those of Buckley and the Brice Firm have garnered criticism from the courts. One such decision is *In re Rivera*, 342 B.R. 435 (Bankr. D.N.J. 2006), where a law firm engaged in the systematic use of pre-signed certifications in support of motions filed

9

Second, respondents question where the dividing line must be drawn with respect to a reasonable inquiry under Bankruptcy Rule 9011. *See* Hr'g Tr., dated Oct. 5, 2011, 42:25 – 43:4 ("Let's say I'm filing a 100-page brief and I'm signing it. I'm the partner and I'm signing it. Now, of course, I'm going to have reviewed the brief but . . . there could be hundreds of cases cited in there. Have I reviewed every single case?"); *see id.* at 58:12 – 16 ("What's the standard? Does he have to ask five questions and then he can say okay? Does he have to ask ten questions and say okay? Does he have to read the document twice? I mean, the . . . Rule is totally vague."). It is true that "[t]here is no litmus test that can be applied to a given filing to determine whether Rule 9011 has been violated." *In re KTMA Acquisition Corp.*, 153 B.R. at 249. An inquiry must be made on a case-by-case basis, taking into account the circumstances of each case. *See id.* (internal citations omitted). "At times, however, the violation is so obvious that the filing speaks for itself." *Id.* at 249.

Such are the circumstances of this case. The attorney in question did not review the document and had no intention of doing so prior to filing. Instead, he authorized – in advance – an associate under his supervision to sign his name to whatever document that associate produced. While he set out a "checklist" for the associate to follow, he had no way of ensuring that the associate would comply with that checklist or the resulting written product would otherwise meet the requirements of Bankruptcy Rule 9011. "A signer may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation. . . . At a minimum, the reasonable inquiry

---

in various bankruptcy and state court proceedings. In holding the firm and attorneys subject to sanctions, the court stated that "[n]o reasonable attorney would consider [the filed documents] to be certifications, nor would any reasonable attorney engage in the practice of using "on-file" signature forms. This practice is in violation of Rule 9011 – because writings were presented for an "improper purpose," i.e., to have the court believe they were certifications. Moreover, the threshold "factual contention" in each of the ersatz submissions – that the signatory read and signed the document – is flatly untrue (not to mention without any evidentiary support)." *Id.* at 458.

standard requires at least some affirmative investigation on the part of the signer." *Id.* at 248-49 (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340-41 (9th Cir. 1987); *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986); *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (Rule 11 "imposes on [the signer] a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look and listen.'")); *see also In re Taub*, 439 B.R. 276, 281 (Bankr. E.D.N.Y. 2010) ("Rule 9011 serves the purpose of assuring courts and litigants that motions, pleadings, and other written submissions signed by an attorney bear the attorney's certification that he or she has acted in a manner that is objectively professional and reasonable under the circumstances.") (quoting *In re Ambotiene*, 316 B.R. 25, 34 (Bankr. E.D.N.Y. 2004)). Of course, the investigation performed by a signatory "need not be to the point of certainty to be reasonable." *In re KTMA Acquisition Corp.*, 153 B.R. at 249 (citing *Nemmers v. U.S.*, 795 F.2d 628, 632 (7th Cir. 1986)). "However, the signer must explore readily available avenues of factual inquiry." *In re KTMA Acquisition Corp.*, 153 B.R. at 249 (citing *Chapman & Cole v. Itel Container Int'l. B.V.*, 865 F.2d 676, 684 n.11 (5th Cir. 1989), *cert. denied*, 493 U.S. 872 (1989)).

Third, Buckley and the Brice Firm argue that Bankruptcy Rule 9011 sanctions are only appropriate where "a particular allegation is utterly lacking in support" and thus are inappropriate here because evidentiary support exists for the factual assertions in the Claim. (Post-Hearing Memo., at 8) (quoting *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 154 (2d Cir. 2000)). As a threshold matter, their argument ignores the plain text of Bankruptcy Rule 9011, which provides for a "certification] . . . to the best of the person's knowledge, information, and belief [that is]

11

*formed after an inquiry reasonable under the circumstances*." Fed. R. Bankr. P. 9011(b).[8] It cannot be that an attorney satisfies his obligation under Bankruptcy Rule 9011 when he conducts no review of the document submitted to the Court. Indeed, some courts have concluded that "[t]he fact that the information contained in documents bearing [the attorney's] signature may have been accurate is not a defense to a Fed. R. Bankr. P. 9011 sanction." *In re Ulmer*, 363 B.R. at 782; *see also Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir. 1988) ("Rule 11 applies to all papers filed in a lawsuit and . . . the signer's conduct should be judged at the time the paper is signed."), *rev'd in part on other grounds*, 493 U.S. 120 (1989); *In re KTMA Acquisition Corp.*, 153 B.R. at 249 ("Whether the signer's conduct was reasonable is an inquiry that focuses on what should have been done by the filer before filing rather than how things turned out; conduct rather than result."). As the court in *In re Rivera* wisely observed:

> [S]omething more than claimed accuracy is required. The rules of this court should be followed . . . [The attorney's] seeking of refuge in the purported accuracy of her data submission is therefore rejected as a defense to violation of Rule 9011. A certifying party must be responsible for that data submission. The [law firm's practice] has annulled the purpose of the responsible party requirement: that is, to prompt diligent inquiry by the certifying individual, and a resulting careful statement made under penalty of perjury, with all of its attendant solemnity.

*In re Rivera*, 342 B.R. at 461 - 462.[9]

---

[8] Each of the Second Circuit cases cited by the respondents is factually distinct from the case at hand because none involve a situation where an attorney did not personally review the document that he signed and submitted to the court. *See In re Highgate Equities, Ltd.*, 279 F.3d 148 (2d Cir. 2002) (sanctions sought against attorney for letter he drafted and sent to bankruptcy court for which he allegedly did not make reasonable inquiry as to the evidentiary basis and which was allegedly submitted for improper purpose); *Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995) (sanctions sought against attorney with respect to a complaint and letters allegedly lacking factual or legal basis and allegedly filed for an improper purpose); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) (sanctions sought against attorney for misstatements made in pleadings that were based on client representations, as well as for failure to disclose a state court action to the district court).

[9] The lack of diligence before affixing one's signature has also historically been frowned upon. Thomas Jefferson derisively commented about King Louis XIV's practice of signing whatever documents were presented to him. *See* Letter from Thomas Jefferson to John Jay (Oct. 8, 1787),

12

In any event, this argument fails because the Claim as originally filed lacked an evidentiary basis. The Claim was not "buttressed by several documentary exhibits," as was the case in the *Highgate* decision relied on by respondents. *Highgate*, 279 F.3d at 155. Rather, the Claim attached a note and mortgage between the Debtor and Option One, with no documentation to connect Option One to Deutsche Bank or to AHMSI. Under the precedent in this jurisdiction, therefore, the Claim was facially deficient as a basis for Deutsche Bank to foreclose or to recover on its Claim because it did not establish the assignment of the note and mortgage from Option One to Deutsche Bank. As Judge Glenn of this Court has explained:

> [I]n the mortgage context, the creditor may initially attach only a summary of its claim, containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt. If the creditor is an assignee, it must also provide an affidavit attesting to the assignment of the note and mortgage.

*In re Minbatiwalla*, 424 B.R. 104, 117 (Bankr. S.D.N.Y. 2010); *see also In re Mims*, 438 B.R. 52, 56 - 7 (Bankr. S.D.N.Y. 2010) (in the lift stay context, stating that "Wells Fargo has not supplied the Court with any evidence that the Note was physically delivered or assigned pursuant to a written agreement. Here, the Note only indicates a transfer from Lend America to Washington Mutual Bank and not to Wells Fargo. Wells Fargo has not presented any evidence that it is in possession of the original Note, or that it received the Note via a valid written assignment.")

Fourth and finally, respondents suggested at oral argument that Bankruptcy Rule 9011 is not implicated because the document in question was merely a proof of claim and the

---

reprinted in 2 *Memoir, Correspondence and Miscellanies from the Papers of Thomas Jefferson,* 249 (Thomas Jefferson Randolph ed., Gray and Bowen 2d ed. 1830) (observing that the King "hunts one half the day . . . and signs whatever he is bid").

amount paid for its preparation was modest. *See* Hr'g Tr. 33:13 – 15, Oct. 5, 2011 ("This is a proof of claim. A garden variety proof of claim fill in the blanks for which the firm is paid $150.00."); *Id.* at 42:18-23 ("Typically proofs of claim as Mr. Zipes, in fact, said are fine – filed by – signed by clients. That's all the Brice Firm does is they help prepare and file the proof of claim."); *Id.* at 56:16-20. But proofs of claim are central to the bankruptcy process as they are the vehicle through which a creditor recovers on its claim. Compliance with Bankruptcy Rule 9011 is particularly important for proofs of claim because a properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Unlike most litigation, the burden is initially placed on the party objecting to the claim to come forward with "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). Under Section 502(a) of the Bankruptcy Code, such a claim is deemed allowed unless a party objects. 11 U.S.C. § 502(a). The Court must therefore be able to rely on the integrity of the proofs of claim before it. Not surprisingly then, Bankruptcy Rule 9011 has specifically been held to apply to proofs of claim. *See Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009); *see also In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310 (5th Cir. 2007); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999).[10]

---

[10] Recent amendments to Bankruptcy Rule 3001 have bolstered the protections afforded to individual debtors with respect to proofs of claim. The Rule has been amended to require that proofs of claim based on a security interest in an individual debtor's property contain certain specific information in support of the claim, including a statement of the amount necessary to cure any prepetition default and, if the security interest is in the debtor's principal residence, an escrow account statement prepared as of the date of the petition. *See Comm'n from the Chief Justice, The Supreme Court of the United States Transmitting Amendments to the Federal Rules of Bankruptcy Procedure*, May 24, 2011, p. 65-6. The

14

Indeed, serious issues of public policy are raised by the practices at issue here. The country is in the midst of a foreclosure crisis, and the news is replete with examples of misleading, inaccurate or incomplete mortgage related pleadings that have been filed in both the federal and state courts.[11] It is easy to find examples in this Court and other local bankruptcy courts of the problems caused by the filing of inadequate documentation related to mortgage obligations. *See In re Lippold*, 2011 Bankr. LEXIS 3282, at *13-14 (Bankr. S.D.N.Y. Sept. 6, 2011); *In re Agard*, 444 B.R. 231, 245-46 (Bankr. E.D.N.Y. 2011); *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 538 (2d Dept. 2011). Thus, it is of the utmost importance that the attorneys practicing before this Court maintain integrity in preparing the documentation of such mortgage obligations. Doing otherwise causes risk that "[t]he debtor and his/her family may lose their home, and the debtor and other creditors may lose significant equity in foreclosure." *In re Gorshtein*, 285 B.R. 118, 122 (Bankr. S.D.N.Y. 2002).

Having found that the conduct here runs afoul of Bankruptcy Rule 9011, the Court turns to the question of whether sanctions should be imposed. The Second Circuit has stated that "[t]he Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court. Because an award might be based on 'any of a number of rules or statutory provisions,' each 'governed by differing standards,' we

---

Rule also was amended to state that failure to provide such information may result in preclusion of "the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case . . . [or the] award [of] other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." *Id.* at p. 66. The amendments took effect on December 1, 2011.

[11] *See* Andrew Keshner, *Upstate Foreclosure Firm Fined $2 Million, Agrees to Overhaul Its Filing Practices*, N.Y.L.J., Oct. 7, 2011, at 1; U.S. Gov't Accountability Office, GAO-11-433, *Mortgage Foreclosures: Documentation Problems Reveal Need for Ongoing Regulatory Oversight* (2011); Testimony of Gov. Elizabeth A. Duke on Foreclosure Documentation Issues: *Robo-Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing Hearing Before the Subcomm. on Housing and Community Opportunity of the House Comm. on Financial Services*, 11th Cong. 2 (2010).

have found it 'imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power.'" *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) (quoting *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997)). The UST argues that it does not seek relief under Bankruptcy Rule 9011, but rather requests that the respondents be held in contempt for violation of M-242 or through the Court's authority under Section 105 of the Bankruptcy Code. For the reasons set forth earlier, however, it is clear that the applicable provision is Bankruptcy Rule 9011, and the Court must therefore address the issue of sanctions as provided for therein.[12]

"Rule 9011, like its counterpart Federal Rule of Civil Procedure 11, plays an important role in maintaining the professionalism of the bar and the integrity of court processes. That role is best effectuated when the Rule is invoked sparingly, and '[a] request for sanctions under Rule 11 is not a tactical device.'" *In re Taub*, 439 B.R. at 281 (quoting *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988)). Parties facing sanctions under Bankruptcy Rule 9011 must be provided with "notice and a reasonable opportunity to respond." Fed. R. Bankr. P. 9011(c). The Second Circuit has held that "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and

---

[12] At the hearing, Buckley and the Brice Firm argued that they had not been given proper notice that Rule 9011 was implicated and requested the opportunity to submit post-hearing briefing. Substantial post-hearing submissions were provided to the Court. *See Post-Hearing Memorandum of Law of Brice, Vander Linden & Wernick, P.C. and Lawrence J. Buckley in Opposition to Motion of United States Trustee Requesting that Such Parties Be Held in Civil Contempt or Be Subject to Sanctions Under 11 U.S.C. § 105* (ECF Doc. # 75); *Third Declaration of Lawrence J. Buckley in Support of Memoranda of Law of Brice, Vander Linden & Wernick, P.C. and Lawrence J. Buckley in Opposition to Motion of United States Trustee Requesting that Such Parties Be Held in Civil Contempt or Be Subject to Sanctions Under 11 U.S.C. § 105* (ECF Doc. # 76); *Declaration by David B. Shaev, Esq. on Behalf of Debtor, Virginia Obasi in Support of the United States Trustee's Motion Requesting that Brice Vander Linden & Wernick, P.C. and Lawrence J. Buckley Should Be (A) Held in Civil Contempt, or Alternatively, (B) Subject to Sanctions Under 11 U.S.C. Section 105* (ECF Doc. # 78); *Post-Hearing Response in Further Support of the United States Trustee's Motion for an Order to Show Cause Why Brice Vander Linden & Wernick, P.C. and Lawrence J. Buckley Should Not Be: (A) Held in Civil Contempt, or Alternatively, (B) Subject to Sanctions Under 11 U.S.C. § 105* (ECF Doc. # 79); *Motion of Brice, Vander Linden & Wernick, P.C. and Lawrence J. Buckley for Authority to File Fourth Declaration of Lawrence J. Buckley in Response to Issues Raised by the United States Trustee* (ECF Doc. # 80). The Court has considered all these post-hearing submissions in rendering its decision.

the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *In re Highgate Equities, Ltd.*, 279 F.3d at 152 (quoting *Nuwesra v. Merrill Lynch, Fenner, & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999)). These requirements "reflect the importance of according fair procedural protections to an attorney or other party facing sanction." *Id.* (citing *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir. 1997), *cert. denied*, 522 U.S. 932 (1997)).

Buckley and the Brice Firm argue that sanctions cannot be imposed because the "safe harbor" provisions of Bankruptcy Rule 9011 have not been met. Bankruptcy Rule 9011(c) sets forth the requirements of this safe harbor:

> a motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [Rule 9011(b)] . . . . The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . .

Fed. R. Bankr. P. 9011(c)(1)(A). The procedural safeguards afforded by the safe harbor provisions of Bankruptcy Rule 9011 "are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether." *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir. 1995)); *see Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[S]anctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance."). As no evidence has been presented that the UST has complied with the safe harbor provisions by

17

serving a copy of its motion on Buckley and his firm before filing it with this Court, the Court declines to enter sanctions in this case.[13]

Of course, Bankruptcy Rule 9011(c) also states that "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate [Rule 9011(b)] and directing an attorney, law firm, or party to show cause why it has not violated [Rule 9011(b)] with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B). It is true that this matter was technically brought on by an order to show cause issued by the Court. The safe harbor provision is nonetheless implicated because the order was not issued *sua sponte*, but rather in response to a motion made by the UST. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (finding that a request for sanctions under Federal Rule of Civil Procedure 11 had not been brought on the district court's own initiative because "the court indicated that it was imposing sanctions in response to [movant's] request and did not state that it was imposing sanctions on [respondent] *sua sponte*.").

In any event, the Court notes that Buckley and his firm have taken steps to remedy the defects in the procedures employed in filing the Claim. To begin with, the Claim filed in this case has been amended to include the electronic signature of Edelman, the same attorney that reviewed the Claim prior to its filing. Beginning in March 2011, the Brice Firm also

---

[13] The facts that form the basis of the UST's motion for sanctions came to light during Buckley's deposition on March 7, 2011. (*See* Zipes Decl. Ex. B, Buckley Dep. Tr., 28:24 – 30:4, Mar. 7, 2011.) Given that this motion was not filed until more than five months later, one can reasonably assume that the conduct here was the subject of extensive discussion between the UST and the respondents before the UST filed its motion. At least one court outside this circuit has found that Bankruptcy Rule 9011's safe harbor requirement can be satisfied by giving appropriate notice to a party other than by the service of a motion. *See Raymond Prof'l Grp., Inc. v. William A. Pope Co. (In re Raymond Prof'l Grp., Inc.)*, 420 B.R. 420, 463 (Bankr. N.D. Ill. 2009) ("The Rule 9011 letter was sufficient in this case to give [respondent] the notice and opportunity to withdraw as is required by the safe harbor provision. The letter contained a detailed recitation of the same violations set forth in the Debtors motion for sanctions and expressly informed [respondent] of the Debtors' intent to seek Rule 9011 sanctions . . . . In this case, [respondent] did thereby receive the intended benefit of the full safe harbor period, and therefore the Debtors are entitled to a decision on the merits of their request for sanctions.") As no argument or evidence has been presented on that issue, however, the Court declines to address it here.

revised its procedures for filings in this jurisdiction, so that the attorney whose signature appears on a proof of claim will be the same individual that has reviewed the claim.[14] (*See* Fourth Declaration of Lawrence J. Buckley, Oct. 17, 2011, at ¶ 3) ("As to the Brice Firm's new procedures, in March 2011 . . . the Brice Firm improved the procedure *for SDNY ECF filings* by requiring that the attorney whose ECF signature appears on a proof of claim is the same attorney who reviewed the claim to ensure the Checklist was satisfied.") (emphasis added). The Court assumes that respondents are taking any other steps necessary in this Court and in other jurisdictions so as to be in compliance with Rule 9011 going forward and to remedy any past deficiencies.[15]

## CONCLUSION

For the reasons set forth above, the Court concludes that the conduct of the respondents was in violation of Bankruptcy Rule 9011, but denies the request for civil contempt and sanctions based on the safe harbor provision of Bankruptcy Rule 9011.

**IT IS SO ORDERED.**

Dated: New York, New York
       December 19, 2011

                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE

---

[14] As a related matter, the Brice Firm has instituted a process to review and report on unresolved claims filed by the Brice Firm in this jurisdiction since January 1, 2010.

[15] The Court is disturbed by respondents' suggestions that, despite these changes, their original filing procedures were adequate. (*See* Fourth Declaration of Lawrence J. Buckley, Oct. 17, 2011, at ¶ 4) ("[T]he Brice Firm believes all proofs of claim filed in the SDNY by the firm are accurate due, in part, to the prior attorney review to ensure compliance with the Firm's Checklist."); Hr'g Tr., 57:13 – 19 ("[A] preauthorization as done here is effectively an inquiry for purposes of 911 [sic] because it's the same inquiry you would have made afterwards."). The Court's refusal to impose sanctions is a direct result of Rule 9011's safe harbor provision and not in any way an approval of the patently unacceptable conduct that is the subject of this decision.